UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                           CASE NO. 04-80642

v.                                          PAUL D. BORMAN
                                             UNITED STATES DISTRICT JUDGE

TARY HOLCOMB D-1,
MARIO JACOBO D-4

       Defendant,
_____/

## OPINION AND ORDER GRANTING DEFENDANT
## MARIO JACOBO'S (D-4) MOTION TO SUPPRESS

SUMMARY

Defendant Mario Jacobo, filed a Motion to Suppress $4000 cash seized from him on January 18, 2001, and any fruits of the seizure. Police justifiably stopped the car driven by Wesley Reyes in which Defendant Jacobo was a passenger, and a protective search of him detected a wad of money in his pants pocket. The money was taken from his pocket, and later seized (forfeited). A wad of money was also found in the driver's pocket ($1000 +). A K-9 search alerted to first the outside, and then the inside of Reyes car. No drugs were found. Both Reyes and Defendant were required to go to the Dearborn police station where the money was officially seized, and Defendant made certain statements. Defendant Jacobo seeks to suppress the money $4000 and any statements made at the station that the prosecutor intends to introduce at trial. As set forth below, the Court grants Defendant Jacobo's Motion to Suppress.

FACTS

1

On March 14, 2005, the Court held an evidentiary hearing at which two City of Dearborn police officers were called as Government witnesses.

Corporal Matthew Cannon of the Dearborn Police Department testified that he was engaging in surveillance of the Residence Inn at 5777 Southfield, Room 522 that day because he had learned that the occupant of that room was from the State of Arizona, a source for narcotics, and that he had paid for the stay with cash.

Late that night, 11:10 p.m., Cannon saw a silver Lincoln Continental arrive, driven by an Afro-American male later identified as Reyes. The front seat passenger, a Hispanic male, later identified as Defendant Jacobo, left the car, and, carrying a bag or suitcase, proceeded to Room 522 where he stayed for 25 minutes, and then exited without the bag or suitcase.

As the car drove away, a Dearborn police marked car followed and stopped it after it went through a flashing red light, and crossed over lanes without signaling.

After the stop, the police satisfied themselves that the driver and Defendant had valid drivers licenses (driver/Michigan; Defendant/Arizona), and no outstanding warrants.

The officers received consent from the driver to search the car, did so, and found no contraband.

The officers patted down the defendants and felt a bulge in Defendant's pocket. Corporal Kevin Schaumburger testified that the patdown did not produce a feeling of a weapon or crack cocaine – they felt a wad of money. Tr. Pp. 101-103. The officers removed the money.

The officers, who had the K-9 "Thunder" with them, carried out a dog sniff search of the outside of the car, and the dog alerted; then the dog went inside the car and alerted. A search of the car did not produce any drugs.

Corporal Cannon, ordered the traffic officers to confiscate the money, and have the two men go to the police station.

The officers took the money, $4000 from Defendant Jacobo, $1000 and change from Driver Reyes, and told the two to follow them to the police station.

The Court concludes that the seizure of Defendant Jacobo's $4000 must be suppressed because the police did not have a basis to seize the money from his pocket during the protective patdown after the traffic stop.

In *Minnesota v. Dickenson*, 113 S.Ct. 2130 (1993), the Supreme Court elaborated on the seminal "stop and frisk" decision of *Terry v. Ohio*, 392 U.S.1 (1968), in the context of permissible frisks/searches.

The Supreme Court stated, with regard to "tactile discoveries of contraband":

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons . . . .
> Regardless of whether the officer detects the contraband by sight or touch, however, the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.

*Dickenson* at 2137.

In the instant case, feeling the wad of money in Jacobo's pocket did not give the officers probable cause to seize it. It was not contraband. That seizure of Jacobo's money violated his rights under the Fourth Amendment. Therefore, evidence of that seizure is not admissible at the trial.

Indeed, the Court notes that the seizure of the money was accompanied by a seizure of Defendant Jacobo, since he was also required by the arresting officer to immediately proceed to the police station. This is analogous to the Supreme Court decision in *United States v. Place*, 103 S. Ct. 2637, 2645 (1983), where the Supreme Court held that a seizure of an airline passenger's luggage "can effectively restrain the person since he is subjected to the possible disruption of his travel plans in order to remain with his luggage or to arrange for its return."

The Court concludes that although the stop of the car for violating the traffic laws was proper under *United States v. Whren*, 116 S. Ct. 690 (1996), and the patdown of Defendant Jacobo for weapons was proper, the seizure of Jacobo's wad of money was in violation of his rights under the Fourth Amendment to the United States Constitution. Feeling the bulge of money clarified that it was not a weapon. Defendant was a passenger in, and not the owner of the car in which no narcotics were found, but as to which the dog alerted. This does not justify seizing the money on the Defendant.

While the officers testified that they did not place Defendant Jacobo under arrest, he was subjected to a seizure of his money by the police, in violation of his Fourth Amendment rights. Further, it could be argued that Jacobo was arrested insofar as Corporal Kevin Schaumburger testified that Corporal Cannon told him "to confiscate the money from both subjects, and to have them follow me to the Dearborn Police Department." Tr.P.97

Accordingly, the Court grants Defendant Jacobo's motion to suppress the currency and any statements resulting from the illegal seizure of the currency, and the events immediately thereafter. See *Wong Sun v. United States*, 371 U.S. 471 (1963).

SO ORDERED.

                                              s/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated: May 19, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on May 19, 2005.

                                              s/Jonie Parker
                                              Case Manager